No. 25-1877

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

GINGER HEADLEY AND MARK COFFELT. INDIVIDUALLY AND ON BEHALF
OF COREY COFFELT, DECEASED,

*Plaintiffs-Appellees*,

V.

VALERIE HELM, BRACKSTIN CARR, TOMMIE LUNTSFORD, BOSHKO
OGNENOVSKI, AND CARLA HECKENMUELLER-BOGGS,

*Defendants-Appellants*.

Appeal from the United States District Court,
For the Eastern District of Missouri
The Honorable Henry Edward Autrey, United States District Judge

## BRIEF OF APPELLEE

**Stephen L. Bishop**
MO Bar No. 71499
Brown & Crouppen, P.C.
4900 Daggett Avenue
St. Louis, MO 63110
Tel. (816) 298-6437
Fax (314) 421-0359
stephenb@getbc.com
*Attorney for Appellees*

## CASE SUMMARY AND REQUEST FOR ORAL ARGUMENT

This interlocutory appeal arises from a straightforward and well-supported ruling denying qualified and official immunity at the pleading stage. Plaintiffs-Appellees' 26-year-old son, Corey Coffelt, died by suicide in the custody of the Missouri Department of Corrections. The Third Amended Complaint alleges that Defendants-Appellants were repeatedly placed on notice—through medical records, psychiatric symptoms, safety classifications, and Coffelt's own pleas—that there was a substantial and escalating risk he would harm himself. Nevertheless, these Defendants left Coffelt alone for hours in administrative segregation with a bedsheet and the means to hang himself, and they did so in direct violation of a mandatory 20-minute segregation-check policy.

The district court correctly held that these allegations plausibly state (1) an Eighth Amendment violation under decades of controlling Eighth Circuit precedent, and (2) a violation of a ministerial duty under Missouri law. Far from imposing novel or expansive liability, the ruling below faithfully applied well-settled law that inmates have a clearly established right to be protected from known suicide risks. Appellees welcome oral argument if the Court concludes it would be beneficial.

# TABLE OF CONTENTS

**CASE SUMMARY AND REQUEST FOR ORAL ARGUMENT**........ i

**TABLE OF CONTENTS** ............................................................... ii

**TABLE OF AUTHORITIES** ...................................................... iv

**JURISDICTIONAL STATEMENT** ........................................... 1

**STATEMENT OF ISSUES FOR REVIEW** ............................ 2

**INTRODUCTION** ......................................................................... 4

**STATEMENT OF THE CASE** ................................................... 6

Allegations Accepted As True ................................................. 6

Procedural History ................................................................. 11

Appellants' Framing On Appeal .......................................... 12

**SUMMARY OF THE ARGUMENT** ........................................ 13

**STANDARD OF REVIEW** ........................................................ 15

**ARGUMENT** ................................................................................ 15

  **I. Defendants Are Not Entitled To Qualified Immunity** ......... 16

    A. Plaintiffs Properly Pleaded Deliberate Indifference ............... 17

    B. Appellants' Authorities Are Distinguishable .......................... 23

  **II. Defendants Are Not Entitled To Official Immunity** ............ 24

    A. A duty is ministerial when it is prescribed "upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority."............................................... 25

    B. Time-Specific Observation Duties Are Ministerial Under Binding Missouri And Eighth Circuit Precedent..................... 27

**CONCLUSION** ...................................……………….… **29**

**CERTIFICATE OF COMPLIANCE** .................................................. **31**

# TABLE OF AUTHORITIES

**Cases**                                                                          Page(s)

*A.H. v. St. Louis Cnty.*,
    891 F.3d 721 (8th Cir. 2018) ........................................................... 27

*Brenner v. Asfeld*,
    No. 18-CV-2383, 2019 WL 2358451 (D. Minn. June 4, 2019) ..... 3, 14

*Cady v. City of Malden*,
    694 S.W.3d 616 Mo. Ct. App. 2024 ........................................... 28

*Coleman v. Parkman*,
    349 F.3d 534 (8th Cir. 2003) ........................................... 2, 16, 19, 22

*Dantzler v. Baldwin*,
    133 F.4th 833 (8th Cir. 2025) ........................................................ 15

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................ 2, 4, 17, 21, 22, 23

*Francisco v. Corizon Health, Inc.*,
    108 F.4th 1072 (8th Cir. 2024) ...................................……..12, 23, 24

*Gregoire v. Class*,
    236 F.3d 413 (8th Cir. 2000) ........................................................ 23

*Hager v. Ark. Dep't of Health*,
    735 F.3d 1009 (8th Cir. 2013) ...................................................... 15

*Hall v. Woodruff*,
    121 F.4th 1155 (8th Cir. 2024) ..................................................... 28

*Hott v. Hennepin Cnty.*,
    260 F.3d 901 (8th Cir. 2001) ................................................... 12, 23

*Letterman v. Does*,
    789 F.3d 856 (8th Cir. 2015) ........................................................ 17

*Liebe v. Norton,*
     157 F.3d 574 (8th Cir. 1998) ............................................................ 16

*Luckert v. Dodge Cnty.,*
     684 F.3d 808 (8th Cir. 2012) ..................................................... 12, 23

*Mitchell v. Forsyth,*
     472 U.S. 511 (1985) ..................................................................... 1, 15

*Rellergert v. Cape Girardeau Cnty.,*
     924 F.2d 794 (8th Cir. 1991) ............................................................ 16

*Schaub v. VonWald,*
     638 F.3d 905 (8th Cir. 2011) ...................................................... 17, 21

*Smith-Dandridge v. Geanolous,*
     97 F.4th 569 (8th Cir. 2024) ...................................... 13, 17, 23, 24

*State ex rel. Alsup v. Kanatzar,*
     588 S.W.3d 187 (Mo. banc 2019) ................................... 2, 14, 25, 27

*State ex rel. Love v. Cunningham,*
     689 S.W.3d 489 (Mo. banc 2024) ........................................... 2, 14

*State ex rel. Morales v. Alessi,*
     679 S.W.3d 467 (Mo. banc 2023) ........................... 2, 14, 25, 28, 29

*Wever v. Lincoln Cnty.,*
     388 F.3d 601 (8th Cir. 2004) ...................................................... 16, 19

*Whitney v. City of St. Louis,*
     887 F.3d 857 (8th Cir. 2018) ........................................................... 2

*Williams v. Missouri Dep't of Corr.,*
     No. 1:24-cv-54-ACL, 2025 WL 48422 (E.D. Mo. Jan. 8, 2025) .......... 16

*Yellow Horse v. Pennington County,*
     225 F.3d 923 (8th Cir. 2000).......................................... 2, 13, 16

**Statutes**

28 U.S.C. § 1331 ........................................................................ 1

28 U.S.C. § 1343(a)(3) ............................................................. 1

28 U.S.C. § 1367 ........................................................................ 1

42 U.S.C. § 1983 ........................................................................ 1

**Rules**

Fed. R. App. P. 28 ................................................................. 30

Fed. R. App. P. 32 ................................................................. 30

Fed. R. App. P. 32(f) ............................................................ 30

Fed. R. Civ. P. 12(b)(6) ...................................... 4, 12, 15, 21, 22, 23

Fed. R. Civ. P. 8 ................................................................... 21

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367 because Plaintiffs asserted claims under 42 U.S.C. § 1983 (R. Doc. 75). After the district court denied, in part, Defendants' motions to dismiss on March 31, 2025, Defendants-Appellants noticed their interlocutory appeal on April 29, 2025 (App.139; R. Doc. 112; App.138; R. Doc. 120). This Court has jurisdiction to review the district court's ruling under the collateral-order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

## STATEMENT OF ISSUES FOR REVIEW

1.     Whether the Third Amended Complaint plausibly alleged that each Appellant was deliberately indifferent and violated Coffelt's clearly established constitutional rights when they knew of—both objectively and subjectively—and disregarded Coffelt's substantial risk of suicide, such that denial of qualified immunity at the pleading stage should be affirmed. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 (8th Cir. 2018); *Coleman v. Parkman*, 349 F.3d 534, 538–39 (8th Cir. 2003); *see also Yellow Horse v. Pennington County*, 225 F.3d 923, 927 (8th Cir. 2000).

2.     Whether the district court properly held that Missouri's official immunity doctrine does not shield Defendant corrections officers from suit when the Complaint amply alleges the officers failed to perform the ministerial duty of policy-mandated visual inmate cell checks every twenty minutes, leaving no discretion as to when or how the checks were to be done. *See State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495–97 (Mo. banc 2024); *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471–73 (Mo. banc 2023); *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191–

2

93 (Mo. banc 2019); *Brenner v. Asfeld*, No. 18–CV–2383 (NEB/ECW), 2019 WL 2358451, at *12 (D. Minn. June 4, 2019).

## INTRODUCTION

This interlocutory appeal presents no complicated or novel legal question. It asks only whether Plaintiffs plausibly alleged—at the Rule 12(b)(6) stage—that Defendants ignored an obvious and escalating risk that Corey Coffelt would take his own life, and whether Missouri's official-immunity doctrine shields correctional officers who failed to perform a mandatory 20-minute visual-check requirement. The district court correctly held that the Complaint satisfies both standards. Applying well-settled Supreme Court and Eighth Circuit precedent, the court concluded that Plaintiffs alleged facts supporting a reasonable inference that each Defendant knew of and disregarded Coffelt's substantial risk of suicide, and that the MCC policy requiring visual checks every twenty minutes created a ministerial duty that left no discretion as to timing.

Appellants' briefing does not meaningfully engage the Complaint's allegations or the district court's analysis. Instead, they urge this Court to weigh facts, discount reasonable inferences, and apply summary-judgment cases to a pleading-stage appeal. Their arguments overlook what Farmer and decades of Eighth Circuit precedent instruct: subjective

4

knowledge of a suicide risk may be inferred where, as here, the risk was obvious from the inmate's documented history, observed symptoms, placement "for his own safety," repeated cries for help, and prolonged lack of monitoring. Likewise, Missouri law forecloses official immunity where officers fail to perform a time-specific, nondiscretionary duty.

Because the district court faithfully applied controlling law to well-pleaded allegations, its denial of qualified and official immunity should be affirmed.

It should be noted that after Plaintiffs' initial Complaint was filed at the lower court level, Defendants sought an immediate stay of discovery, which was granted. So, no discovery has taken place, and Plaintiffs were able to ascertain little to no facts to support its claim. First, Defendants stay discovery to limit Plaintiffs' facts. Then, they move to dismiss Plaintiffs' Complaint because it lacks the facts they are keeping from Plaintiffs. The district court correctly ruled Plaintiffs' Complaint met the pleading standards and should be affirmed. Plaintiffs deserve their day in court.

## STATEMENT OF THE CASE

## Allegations Accepted As True At This Stage

On November 2, 2021, Mr. Coffelt ("Coffelt") was an inmate at Moberly Correctional Center (MCC). App. 26; R. Doc. 75, at ¶ 21. During his incarceration, Defendants had knowledge and possession of Coffelt's medical records which contained reports of his three prior suicide attempts by hanging. App.022; R. Doc. 75, at ¶ 2. On November 11, 2021, Coffelt sent another health services a request for medication and mental health services. App. 026; R. Doc. 75, at ¶ 22.

On November 19, 2021, Coffelt was seen by Defendant Eddy, a licensed professional counselor. Coffelt told Defendant Eddy that he was experiencing paranoia, audio/visual hallucinations, and anxiety, and more specifically, that he was "seeing the 'grim reaper,' attachment [sic] by an evil paranormal entity, seeing a 'torn angel' moving towards evil, hearing trash bags moved or banging doors and believe[ed] that other inmates were being killed." App. 026-27; R. Doc. 75, at ¶ 23. Coffelt also reported lack of sleep due to hypervigilance and requested medication. However, Coffelt was denied medication, listed as "stable", and his

symptoms and previous suicide attempts were ignored. App. 027; R. Doc. 75, at ¶ 23.

On December 6, 2021, Coffelt was again seen by Defendant Eddy for complaints of psychosis, paranoia, severe anxiety, and depression; Coffelt reported hearing "chain saws all around him, seeing the 'grim reaper,' and [that he] believe[ed] that the water and food were poisoned." App. 027; R. Doc. 75, at ¶ 24. Coffelt was again completely ignored and denied medication. (*Id.*)

On December 10, 2021, Coffelt reported that he was suffering from psychosis, severe depression, and anxiety, and that he continued to see "scary things" following him. The MDOC Mental Health Treatment Team determined that Coffelt would be referred to a psychiatrist. App. 027; R. Doc. 75, at ¶ 25.

On December 16, 2021, Coffelt was seen by Psychiatrist Kavita P. Pendurthi and diagnosed with substance-induced mood disorder with psychosis and was prescribed anti-psychotic and anti-anxiety medications. App. 027; R. Doc. 75, at ¶ 26. Between December 21, 2021 and Coffelt's death on February 6, 2022, Coffelt was not consistently

administered his medications and missed them at least nine (9) times, including on February 4, 2022. App. 028; R. Doc. 75, at ¶¶ 27-35.

On February 4, 2022, Coffelt was seen by Defendant Huff for a segregation initial evaluation and subsequently ordered to segregated confinement because of there being "an immediate security risk involved," and it was noted that "[t]here is urgent need to separate the offender from others for his/her own safety or that of others" and "for the security and good order of the institution." App. 028-29; R. Doc. 75, at ¶ 36. Coffelt's medical record from February 4, 2022, indicates he was "suffering from existing medical/mental health conditions, taking dose-by-dose psychotropic medications, and quiet"; Coffelt's symptoms and prior suicide attempts were again ignored and Coffelt was not placed on suicide watch. App. 028-9; R. Doc. 75, at ¶ 36.

On February 6, 2022, Defendants Ognenovski, Helm, Heckenmueller, Carr, and Luntsford were on duty and responsible for checking on Coffelt per MCC policy. App. 029; R. Doc. 75, at ¶ 41. These Defendants left Coffelt unattended with a bedsheet and holsters with which he could hang himself. App. 029; R. Doc. 75, at ¶ 37. Coffelt was left unattended in his cell for over three hours screaming for help that he

needed to talk to someone, requesting a pen to write his family members (a suicide note), and calling out to Defendant officers for help. Appellee Add. 1-2; Appellee App. 1-2; R. Doc. 130.3, p.1-2. Multiple witnesses confirmed Defendants failed to do their rounds and continuously ignored Coffelt; one specifically recalled Defendant Heckenmueller told Coffelt that "you don't need a pen to write your people, don't nobody love you." Appellee Add.3; Appellee App.3; R. Doc. 130.3, p.3.

On February 6, 2022, after Defendants knew about Coffelt's obvious signs of suicide and mental health and ignored him for hours, Coffelt was found hanging in his cell with a bedsheet tied around his neck. App. 029; R. Doc. 75, at ¶ 38. Coffelt had been hanging for so long that rigor mortis had set in (left arm was sticking out stiff) and he was already gray in color when he was removed from his cell. Appellee Add. 3; Appellee App.3; R. Doc. 130.3, p.3. Defendants told EMS the last time they saw Coffelt alive and talking was an hour prior to his death. App. 029; R. Doc. 75, at ¶ 42.

Moberly Correctional Center policy mandated that Coffelt be checked every 20 minutes in the administrative segregation housing unit. App. 029; R. Doc. 75, at ¶ 42. Defendants Ognenovski, Helm,

Heckenmueller, Carr, and Luntsford were on duty and were responsible for checking on Coffelt per MCC policy. App. 029; R. Doc. 75, at ¶ 41. Defendants failed to check on Coffelt for hours prior to his suicide in clear violation of Coffelt's established constitutional rights and against jail policy. App. 029-30; R. Doc. 75, at ¶¶ 41, 50.

Between November 2, 2021, and February 6, 2022, Coffelt submitted numerous medical complaints to staff at MCC concerning his mental health conditions concerning depression, anxiety, psychosis, audio/visual hallucination, and lack of sleep. App. 029; R. Doc. 75, at ¶ 45. Defendants were aware that Decedent had an objectively serious mental health need, as it was obvious based on his condition, numerous complaints, request for segregation, and Decedent's prior records regarding his condition, yet Defendants failed to provide adequate and timely medical treatment, failed to properly monitor Decedent while he was in administrative segregation and failed to ensure Decedent's safety, which ultimately led to his untimely death. App. 030; R. Doc. 75, at ¶ 46.

## Procedural History

Defendants moved to dismiss three counts of Plaintiffs' Complaint at the district court level. App.074-75; R. Doc. 91. The district court granted Defendant's motion as to Plaintiffs' failure to train or supervise claim (Count VI) and denied it as to Plaintiffs' denial of medical care and wrongful death claims (Count II and V). App. 139; R. Doc. 112.

On Count II, the district court found Defendants were not entitled to official immunity because the Complaint plausibly alleges the policy mandating cell checks met the ministerial duty exception because checking on inmates every twenty minutes leaves no discretion in when cell checks were to be performed. App. 137; R. Doc. 112, p.29.

On Count V, the district court ruled the Complaint contained sufficient facts, when taken as true, that alleged Defendants violated Coffelt's constitutional right to be protected from suicide and were not entitled to qualified immunity when Defendants knew, and it was obvious that there was a strong likelihood Coffelt was going to harm himself. App.121-22; R. Doc. 112, p.13-14. Defendants now make this interlocutory appeal of the district court's findings.

11

## Appellants' Framing On Appeal

Appellants attempt to recast the Complaint as failing to allege subjective knowledge, arguing Coffelt was "stable", Coffelt's records were not reviewed, and that reliance on policy violations is insufficient. But these arguments misstate the pleading standard and disregard the Complaint's factual allegations—many of which the district court explicitly credited. App. 121-22,136-77; R. Doc. 112, p.13-14, 28-29.

Appellants' briefing also relies heavily on summary-judgment and post-trial cases (e.g., *Luckert, Hott, Francisco*), which evaluate developed evidentiary records, not the sufficiency of pleadings. As the district court impliedly recognized, nearly all cases Appellants cite arise after discovery, making them easily distinguishable at the Rule 12(b)(6) stage where very limited information is available to Plaintiffs.

# SUMMARY OF THE ARGUMENT

**I.** Defendants are not entitled to qualified immunity. Plaintiffs' Complaint plausibly alleged that Defendants were deliberately indifferent to Coffelt's clearly established constitutional right to be protected from suicide.

**I.A.** Plaintiffs alleged deliberate indifference: Appellants had subjective knowledge of and were confronted with the objectively serious medical need of Coffelt's substantial suicide risk and failed to take any measures to abate said risk: MDOC records documented three prior suicide attempts by hanging; Coffelt had persistent mental-health symptoms, psychiatric medication, segregation "for his own safety"; Coffelt was kicking and screaming for help and a pen to write his family members (suicide note) for hours before his death; and the heightened monitoring the institution itself mandated (20-minute checks) for Coffelt's placement. *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 576 (8th Cir. 2024); *Yellow Horse v. Pennington Cty.*, 225 F.3d 923, 927 (8th Cir. 2000).

**I.B.** Appellants cited authorities are distinguishable.

**II.** Defendants Are Not Entitled To Official Immunity.

**II.A.** As the Missouri Supreme Court held, a duty is ministerial when it is "to be performed upon a given state of facts in a prescribed manner…without regard to the official's judgment." *See State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495–97 (Mo. banc 2024); *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471–73 (Mo. banc 2023).

**II.B.** A directive to perform time-specific visual checks every 20 minutes is the paradigm of a ministerial task: it prescribes when the act must be done and what must be done, leaving no discretion to omit a round for an hour. *Love*, 689 S.W.3d at 495–97; *Morales*, 679 S.W.3d at 471–73; *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191–93 (Mo. banc 2019); *Brenner v. Asfeld*, No. 18–CV–2383 (NEB/ECW), 2019 WL 2358451, at *12 (D. Minn. June 4, 2019).

## STANDARD OF REVIEW

De novo review applies to denial of immunity at the Rule 12(b)(6) stage, accepting well-pleaded facts as true and drawing reasonable inferences in Appellees' favor. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). On interlocutory appeals of immunity cases, the Court has jurisdiction to determine pure issues of law, but lacks jurisdiction to decide factual issues, including whether the record sets forth a genuine issue of fact for trial. *Dantzler v. Baldwin*, 133 F.4th 833, 842 (8th Cir. 2025) The Court addresses the legal sufficiency of the Complaint without resolving factual disputes or weighing evidence. See Mitchell, 472 U.S. at 528–30.

## ARGUMENT

At this stage of litigation, with the facts taken as true and reasonable inferences drawn in favor of Plaintiffs, Plaintiffs plausibly and sufficiently pleaded deliberate indifference to a clearly established constitutional right. Plaintiffs also plausibly and sufficiently pleaded that Defendant's failed to perform a ministerial duty with no discretion in how or when to do so. Therefore, the district court's ruling denying

Defendants qualified immunity as to Count V and denying Defendants

official immunity as to Count II should be affirmed.

## I.   <u>**Defendants Are Not Entitled To Qualified Immunity.**</u>

To prevail against a claim of qualified immunity, plaintiff must

show (1) the facts alleged or shown by the plaintiff make out a

constitutional violation, and (2) that the constitutional right allegedly

violated was 'clearly established.' *Williams v. Missouri Dep't of Corr.*, No.

1:24 CV 54 ACL, 2025 WL 48422, at *7 (E.D. Mo. Jan. 8, 2025). Because

the issue of qualified immunity is before this Court regarding a motion

to dismiss, Plaintiffs may prevail based solely on what Plaintiffs allege

in the Complaint. Id.

For decades now, the Eighth Circuit had clearly established that

jail/prison officials violate the Constitution by ignoring a known or

obvious suicide risk and failing to take reasonable measures to abate said

risk. *See Yellow Horse*, 225 F.3d at 927; *Coleman*, 349 F.3d at 538–39;

*Wever*, 388 F.3d at 606–08.; *Rellergert by Rellergert v. Cape Girardeau

Cnty., Mo.*, 924 F.2d 794, 797 (8th Cir. 1991); *see also Liebe v. Norton*, 157

F.3d 574, 577 (8th Cir. 1998).

Coffelt's constitutional rights were clearly established. At this stage, Plaintiffs should prevail solely on the facts alleged in their Complaint. Plaintiffs' Complaint wholly alleges, with supporting facts, that Defendants' conduct of ignoring Coffelt's obvious and known risk of suicide and failing to perform inmate cell checks violated Coffelt's constitutional rights under the Eighth Amendment and amounted to deliberate indifference.

**A. Plaintiffs Properly Pleaded Deliberate Indifference.**

The Eighth Amendment standard is familiar: officials are deliberately indifferent if they know of and disregard a serious risk to inmate health or safety. Farmer, 511 U.S. at 837–38. The knowledge required for deliberate indifference can be proven by direct awareness or by the risk's obviousness; both are plausibly alleged. *See Smith-Dandridge*, 97 F.4th at 576 (citing *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). Crucially, subjective knowledge may be established by inference from circumstantial evidence, including where the risk is obvious. *Farmer*, 511 U.S. at 842; *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011).

The Complaint, on pages 11 and 23, plausibly alleges officers knew, both objectively and subjectively, of Coffelt's *obvious* suicide risk. App. 30, 42; R. Doc. 75, at ¶¶ 46, 107. When these allegations are taken as true, that is all that is required by Plaintiffs at this stage. App. 30, 42; R. Doc. 75, at ¶¶ 46, 107. Appellants contend on p. 17 of their brief that the Complaint fails to allege Defendants had actual knowledge about Coffelt's mental health, his medication regime, his segregation order, and services Coffelt received from health care providers in the lead up to his administrative segregation and eventual suicide. App. 026-28; R. Doc. 75, at ¶¶ 22–36. To the contrary, the Complaint does exactly that in paragraphs 46 and 107. App. 30,42; R. Doc. 75, at ¶¶ 46, 107.

The Complaint also contains allegations supported by abundant facts rendering Coffelt's suicide risk both known and obvious to Defendant officers assigned to Coffelt in segregation from February 4 through February 6, 2022. MDOC records documented three prior suicide attempts by hanging. App. 22; R. Doc. 75, at ¶ 2. Coffelt repeatedly reported psychotic symptoms and was prescribed antipsychotic/anxiolytic medication up until his death, yet was inconsistently administered the medication. App. 026-28; R. Doc. 75, at ¶

18

22-35. Coffelt was placed in Administrative Segregation, in part "for his own safety", a placement that, by policy, triggers 20-minute checks. App.028-29; R. Doc. 75, at ¶ 36. Despite those requirements, Appellants admitted the last sighting before his death was an hour, which is triple the maximum interval the policy permits. App. 029; R. Doc. 75, at ¶ 42. These allegations easily permit the inference that the risk was obvious yet disregarded. A jury could reasonably deduce that appellants recklessly disregarded Coffelt's suicide risk when they issued Coffelt a bed sheet and placed him in a cell where they could not easily observe him. *See Coleman*, 349 F.3d at 538–39 (denying qualified immunity where facts supported inference that officers knew of suicide risk and nonetheless housed detainee unsupervised); *Wever*, 388 F.3d at 606–08 (same).

Furthermore, most recently, facts have come to light which are not yet contained in the Complaint. With these facts taken as true, reasonable inferences may be drawn that Defendant officers had clear and undisputed knowledge of Coffelt's obvious risk of suicide, yet blatantly ignored it and instead taunted Coffelt.

Coffelt was left unattended in his cell for over three hours kicking his cell door and screaming for help that he needed to talk to someone, requesting a pen to write his family members (a suicide note), and calling out to Defendant officers for help and to see a mental health professional. Appellee Add. 3; Appellee App.3; R. Doc. 130.3, p.3. Multiple witnesses confirmed Defendants failed to do their rounds and continuously ignored Coffelt; one specifically recalled Defendant Heckenmueller told Coffelt that "you don't need a pen to write your people, *don't nobody love you*." Appellee Add. 3; Appellee App. 3; R. Doc. 130.3, p. 3. Once found, Coffelt had been hanging for so long that rigor mortis had set in (left arm was sticking out stiff) and he was already gray in color when he was removed from his cell. Appellee Add. 3; Appellee App.3; R. Doc. 130.3, p.3. Knowing these facts now, Plaintiffs' Complaint adequately alleges deliberate indifference, and no other inference to be drawn from these facts other than Defendants knew of Coffelt's suicide risk and did absolutely nothing about it. Rather, they mocked him in the final hours before his death.

Appellants insist the Complaint alleges inconsistent facts, such that officers failed to review records yet states Defendants knew of Coffelt's health risk, and therefore the Complaint is not plausible. That

overreads pleading burdens and misstates what matters at the Rule 12(b)(6) stage. Defendants' argument fails first, because under Rule 8(d), a plaintiff may plead in the alternative, even inconsistently; the court then asks whether any pleaded set of facts states a claim. Fed. R. Civ. P. 8(d)(2)–(3). Here, even assuming (as Appellants argue) some officers did not read medical files, the Complaint still alleges circumstantial and institutional indicators of risk: psychiatric treatment; hallucinations and paranoia; asking Defendants for a pen to write a suicide note; kicking and screaming for help for hours before his death; segregation placement "for risk of harm to self"; and the very adoption of 20-minute checks for that placement, from which actual knowledge of Coffelt's serious risk of suicide may be inferred. *Farmer*, 511 U.S. at 842; *Schaub*, 638 F.3d at 914–15. Second, Defendants' argument begs the Court to weigh facts such that Coffelt was listed as quiet and not placed on suicide watch. Taken as true and viewed in light most favorable to Plaintiffs, these facts mean the Defendants failed to accurately assess Coffelt and failed to place him on suicide watch. Defendants tempt this Court to weigh facts, arguing that because Coffelt was listed as "quiet" and not on suicide watch, his risk of suicide must not have been obvious. Defendants'

argument is improper and premature with the facts taken as true and with the limited info available to Plaintiffs at the 12(b)(6) stage.

Appellants also insist the nurse's non-placement of Coffelt on "suicide watch" defeats the plausibility of Plaintiffs' allegations. Appellants rely on a nurse practitioner's evaluation noting "quiet" demeanor and no suicide-watch placement. App. 28-9; R. Doc. 75, at ¶ 36. But, controlling precedent makes clear that custody officials remain obligated to take reasonable measures in light of risks known to them. *Farmer,* 511 U.S. at 844–45. This Court likewise recognizes that monitoring failures in the face of known warning signs can support liability notwithstanding medical staff involvement. *See Coleman*, 349 F.3d at 538–39 (officers denied qualified immunity despite detainee's denial of suicidality). Appellants' argument suggests that because a nurse did not impose "suicide watch," custody staff could treat the risk as non-existent. That is not, and has never been, the law. Farmer, 511 U.S. at 844–45.

**B. Appellants' Authorities (*Luckert, Hott, Gregoire, Francisco, Smith-Dandridge*) Are Distinguishable.**

Plaintiffs met the pleading standards in their Complaint and Defendants attempt to heighten the burden with their supporting caselaw. The cases upon which they rely are distinguished as follows:

*Luckert v. Dodge County* reversed a post-trial verdict where policy lapses alone did not show deliberate indifference on that record. It does not erect a categorical rule that ignoring required watch intervals can never be deliberate indifference, especially not at the 12(b)(6) stage. 684 F.3d 808.

*Hott v. Hennepin County* involved no allegations of prior attempts or comparable indicators tied to the individual officer, and again turned on a developed record; it does not foreclose pleading the claim here. 260 F.3d 901.

*Gregoire v. Class* applied the Farmer standard and confirms that deliberate indifference requires more than negligence; Plaintiffs have alleged more than negligence by pleading the hour-long lapse despite the 20-minute mandate in segregation for safety. 236 F.3d 413.

*Smith-Dandridge v. Geanolous* granted qualified immunity on a distinct record; it does not bar claims where, as here, the obviousness and monitoring failure are plausibly alleged. 97 F.4th 569.

*Francisco v. Corizon Health, Inc.* was decided on summary judgment after a developed record where the decedent denied suicidality earlier that day and mental-health staff had evaluated him; the Court held the record did not show deliberate disregard by the officers there. 108 F.4th 1072.

Plaintiffs have amply and plausibly plead deliberate indifference against Defendants and the district court's ruling denying Defendants qualified immunity and denying Defendants' motion to dismiss Count V should be affirmed.

## II.   Defendants Are Not Entitled To Official Immunity.

The district court correctly denied official immunity on Count II because MCC's 20-minute segregation-check requirement imposed a ministerial, nondiscretionary duty that Defendants admittedly failed to perform. Under well-established Missouri law, official immunity protects the exercise of judgment but does not shield public employees from liability when they fail to perform time-specific, mandatory duties. The

24

policy at issue here fits squarely within the Missouri Supreme Court's modern ministerial-duty framework.

### A. A Duty Is Ministerial When It Is Prescribed "Upon A Given State Of Facts, In A Prescribed Manner, In Obedience To The Mandate Of Legal Authority."

Missouri's official-immunity doctrine protects officials performing discretionary acts, but not those failing to perform ministerial duties— i.e., tasks performed "upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to the official's judgment." Love, 689 S.W.3d at 495–97; *Morales*, 679 S.W.3d at 471–73. The Missouri Supreme Court has repeatedly recognized that statutes, regulations, and departmental mandates can create ministerial duties. *Alsup*, 588 S.W.3d at 191–93; *Morales*, 679 S.W.3d at 471–73; Love, 689 S.W.3d at 495–97.

Here, the pleaded policy requires officers to visually check segregation residents three times per hour, or every 20 minutes. App. 029; R. Doc. 75, at ¶ 40. That is a rote, time-based obligation: it prescribes when the check must occur (every 20 minutes) and what must be done (a visual check). App. 029; R. Doc. 75, at ¶ 40. Failing to perform any round for an hour is not an exercise of "judgment"; it is a nonperformance of a

clerical duty. *See Love*, 689 S.W.3d at 495–96. The Appellants' suggestion that the visual check requires the officers to then make a judgment call as to the inmate's health changes the duty to discretionary is incorrect.

A time-mandated visual cell-check states when and how the check is to be performed. The idea that if a duty leaves any room whatsoever for "how" the duty is done then automatically converts that duty into a discretionary one would erase the ministerial exception altogether—a move the Missouri Supreme Court has explicitly declined to make. Although the corrections officers may have some minor discretion in how they perform cell checks, policy requires them to be at strict intervals and visual. All tasks leave room for some discretion, but not discretion in doing what is required in order to complete a duty, which is why this argument ultimately fails.

For instance, corrections officers could perform jumping jacks and make animal noises while performing the visual inmate cell checks every twenty minutes. However, the officers would still be required to do the checks visually and every twenty minutes in order to complete the duty. The time requirement (how often) and visual requirement (how) leave no discretion. If the duty is not done visually or on time, the duty is not

complete. Because the policy mandates how and how often this duty is to be performed, the duty is clerical in nature, something even a subordinate could perform. Therefore, the duty is ministerial.

### B. Time-Specific Observation Duties Are Ministerial Under Binding Missouri And Eighth Circuit Precedent.

In *A.H. v. St. Louis County*, the Eighth Circuit upheld a jury verdict against jail personnel who failed to conduct required observation checks and recognized that time-specific monitoring obligations constitute nondiscretionary duties within Missouri's ministerial framework. 891 F.3d 721, 729–30 (8th Cir. 2018). *A.H.* explicitly distinguished duties that involve judgment (such as how much attention to give an inmate) from the non-negotiable requirement to perform the checks at the required intervals.

Similarly, the Missouri Supreme Court in *Alsup* held that when a policy requires officers to act at specific times or in specific ways, the duty is ministerial even if some discretion exists within the performance of the task. 588 S.W.3d at 191–93. The act of conducting the check at the mandated time is ministerial; the officer's subjective judgments about what they see during the check do not convert the act itself into a discretionary one.

Thus, even if Defendants retained discretion to evaluate what a check revealed, they had no discretion to omit or delay the check itself. Their admitted failure to perform any check for more than an hour — three times the permitted interval — violates a purely ministerial obligation.

Appellants' reliance on *Hall v. Woodruff* and *Cady v. City of Malden* is distinguishable. *Hall v. Woodruff* reversed the denial of official immunity where the MDOC policy on "enemy declarations" left open-ended discretion in how and when to check and implement safeguards—the policy used "and/or" formulations and lacked time prescriptions. 121 F.4th 1155. The Court held such a policy did not create a ministerial duty. By contrast, this policy imposes a schedule: every 20 minutes. That temporal prescription eliminates discretion as to whether and when to perform the check, precisely what *Love* and *Morales* identify as ministerial.

Likewise, *Cady* involved video monitoring practices without a time-specific mandate and concluded the manner of monitoring was discretionary. Again, time-specific visual rounds every 20 minutes are different in kind. The existence of some officer judgment during a check

(e.g., what else to observe), or the existence of a judgment immediately after completing the visual check, does not convert the duty to conduct the check at a fixed interval into a discretionary act. *See Morales*, 679 S.W.3d at 471–73 (focus is whether any discretion remains to complete the act at all). The check is completed once the officer sees the inmate every twenty minutes.

For the foregoing reasons, the district court's ruling denying Defendants official immunity and denying their motion to dismiss Count II of the Complaint should be affirmed.

## CONCLUSION

The district court correctly denied the motion to dismiss on qualified immunity (Count V) and official immunity (Count II). At the pleading stage, Plaintiffs were required only to allege facts supporting a plausible inference that Defendants knew of and disregarded a substantial risk that Corey Coffelt would harm himself, and that they failed to perform a mandatory ministerial duty imposed for his protection. The Third Amended Complaint satisfies that standard. The district court correctly concluded that the alleged facts establish a plausible claim of deliberate indifference under well-settled law, and that

Missouri's official-immunity doctrine does not shield officers who fail to perform a nondiscretionary, time-specific safety check.

For these reasons, Plaintiffs-Appellees respectfully request that this Court **affirm** the district court's denial of qualified and official immunity and remand for further proceedings.

Date: November 25, 2025

Respectfully submitted,

**Stephen L. Bishop**

/s/ *Stephen L. Bishop*
MO Bar No. 71499
Brown & Crouppen, P.C.
4900 Daggett Avenue
St. Louis, MO 63110
Tel. (816) 298-6437
Fax (314) 421-0359
stephenb@getbc.com
*Attorney for Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing complies with the typeface and formatting requirements of Fed. R. App. P. 28 and 32, in that it is written in Century Schoolbook 14-point font, and that it contains 5,271 words as determined by the word-count feature of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that the brief has been scanned for viruses and is virus-free. All required privacy redactions have been made. The hard copies submitted to the clerk are exact copies of the CM/ECF submission.

/s/ **Stephen L. Bishop**
*Attorney for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2025, the foregoing was filed electronically through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system.

*/s/ Stephen L. Bishop*